UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIELLE E. HUDSON,

                Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

                Defendant.

Case No. 3:15-cv-05437-KLS

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge.[1] For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance and SSI benefits alleging she became disabled beginning November 15, 2007, due to a stroke, depression, and memory and cognitive problems.[2] Her applications were denied on initial administrative review and on reconsideration.[3] At a hearing held before an Administrative Law Judge (ALJ) plaintiff appeared and testified, as

---

[1] 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

[2] Dkt. 9, Administrative Record (AR), 13, 102.

[3] AR 13.

ORDER - 1

did a vocational expert.[4]

In a written decision the ALJ determined that prior to April 1, 2011, plaintiff was capable of performing her past relevant work, but not thereafter, and that both prior to and after April 1, 2011, she was capable of performing other jobs existing in significant numbers in the national economy, and therefore not disabled.[5] The Appeals Council denied plaintiff's request for review of the ALJ's decision making that decision the final decision of the Commissioner, which plaintiff then appealed to this Court.[6] The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred:

(1) in evaluating the medical evidence in the record, including two psychological evaluations performed by Kathleen Mayers, Ph.D.;

(2) in discounting plaintiff's credibility;

(3) in rejecting the lay witness evidence;

(4) in assessing plaintiff's residual functional capacity (RFC); and

(5) in finding plaintiff to be capable of performing both her past relevant work and other jobs existing in significant numbers in the national economy.

Plaintiff further argues reversal of the ALJ's decision is supported by additional medical opinion evidence submitted to the Appeals Council. For the reasons set forth below, the Court agrees the ALJ erred in rejecting the lay witness evidence, but finds that while the ALJ's decision should be reversed on this basis, this matter should be remanded for further administrative proceedings. In

---

[4] AR 37-99.

[5] AR 13-30.

[6] AR 1; 20 C.F.R. § 404.981, § 416.1481; Dkt. 3.

ORDER - 2

addition, the Court finds reversal and remand is appropriate in light of the concerns surrounding the circumstances of Dr. Mayers' second evaluation discussed below.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination.[7] "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."[8] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record."[10]

Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required."[11] "If the evidence admits of more than one rational interpretation," that decision must be upheld.[12] That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made."[13]

I.  The ALJ's Rejection of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives

---

[7] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991).

[8] *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

[10] *Batson*, 359 F.3d at 1193.

[11] *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[12] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

[13] *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

ORDER - 3

reasons germane to each witness for doing so."[14] In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision.[15] The ALJ also may "draw inferences logically flowing from the evidence."[16]

The record contains a function report from plaintiff's ex-husband, Lestor Hudson, who relayed his observations of her symptoms and limitations. Specifically, Mr. Hudson stated that plaintiff has memory deficits, lacks some cognitive function, has very little physical stamina, and has headaches that affect her vision.[17] He further stated that plaintiff gets help with household chores, is unable to follow a recipe all the way through, and has problems counting money and balancing a checkbook.[18] Mr. Hudson also stated plaintiff has problems with reading, speaking, and inputting information, is unable to remember directions, and does not handle instructions, stress, changes in her routine, or interactions with authority figures well.[19]

The ALJ stated he considered Mr. Hudson's statements, but gave them "little weight" as they were "inconsistent with the medical evidence of file and [plaintiff's] activities."[20] Plaintiff argues, and the Court agrees, that this type of general finding, without any reference to the actual evidence in the record is wholly insufficient. While an ALJ may reject lay witness testimony that is inconsistent with specific medical evidence, it is improper to do so on the basis of a conclusory

---

[14] *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).
[15] *Id.* at 512.
[16] *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).
[17] AR 304.
[18] AR 305-08.
[19] AR 308-10.
[20] AR 27.

ORDER - 4

statement such as that offered by the ALJ here.[21] Further, although an ALJ also may discount lay witness testimony due to inconsistency with other evidence regarding the claimant's activities,[22] again without reference to specific portions of the record supporting that finding, it is impossible for the Court to determine whether the ALJ's reasons are supported by substantial evidence. The ALJ, accordingly, erred here.

II.   The ALJ's Evaluation of Dr. Mayers' Opinions

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.[23] Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]."[24] In such situations, "the ALJ's conclusion must be upheld."[25] Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility."[26] In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."[27] The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[28]

In early September 2011, Dr. Mayers evaluated plaintiff, diagnosing her with a severe cognitive disorder related to a stroke versus vascular dementia, an adjustment disorder with

---

[21] *Bruce v. Astrue*, 557 F.3d 1113 (9th Cir. 2009); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

[22] *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

[23] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

[24] *Sample*, 694 F.2d at 642.

[25] *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

[26] *Id.* at 603.

[27] *Reddick*, 157 F.3d at 725.

[28] *Id.*

ORDER - 5

anxiety, and a possible depressive disorder possibly related to a stroke.[29] Dr. Mayers found plaintiff had significant cognitive functional limitations based in part on test scores indicating significant memory deficits suggesting she "would be likely to have serious problems caring for herself and her daughter."[30] However, Dr. Mayers was not certain plaintiff's efforts on testing were "actually good" or if she malingered, stating that her ability to work following her stroke and perform household chores called those test scores into question.[31] Dr. Mayers concluded that "[f]urther background information was needed to make this judgment."[32]

In a follow-up evaluation Dr. Mayers performed on December 5, 2011, additional testing was administered, including the Test of Memory Malingering (TOMM).[33] Dr. Mayers found the TOMM results to be "of great interest and clearly suggest a less than optimal effort," stating that the previous evaluation's test results "are very likely to be invalid . . . , with the likelihood of a very inaccurate presentation of her capabilities."[34] Dr. Mayers concluded it was "possible that she has serious cognitive deficits."[35] However, Dr. Mayers was "not willing to state that any of her earlier results are valid, based on the TOMM result."[36]

The ALJ gave "[l]ittle weight" to Dr. Mayers' September 2011 conclusions, because the evaluation findings and plaintiff's presentation were "vastly different" from what was noted and reported by plaintiff's treatment providers, including her treating physician, which suggested an

---

[29] AR 547.
[30] AR 546-47.
[31] *Id.*
[32] AR 547.
[33] AR 558.
[34] AR 558-59.
[35] AR 559.
[36] *Id.*

ORDER - 6

attempt on plaintiff's part to exaggerate her symptoms.[37] The ALJ also pointed to the fact that at the time of the September 2011 evaluation, Dr. Mayers herself suspected the potential invalidity of the test results, noting in particular the inconsistency with the evidence in the record regarding plaintiff's ability to care for herself and perform household chores.[38] Lastly, the ALJ mentioned the subsequent testing Dr. Mayers performed in December 2011, indicating that the previous test scores were very likely to be invalid based on the TOMM.[39]

In challenging the ALJ's rejection of Dr. Mayers' September 2011 conclusions, plaintiff argues Dr. Mayers' December 2011 conclusions appear to have been tainted to some extent by *ex parte* telephone communication between an agency adjudicator and Dr. Mayers. The Court finds the evidence of possible *ex parte* contact to be such that it raises serious questions as to the propriety of the ALJ's reliance on the December 2011 conclusions, even in part, in rejecting Dr. Mayers September 2011 conclusions. Specifically, following the September 2011 evaluation, an agency adjudicator requested a follow up diagnostic interview, along with validity testing, from Dr. Mayers.[40] It also appears the adjudicator attempted to influence the outcome – or at least the direction – of the evaluation:

> I spoke to Dr. Mayers about what we are looking for from her in resolving this claim . . . She is going to apply a tomm & build in an interview w/ focus on actual vs feigned deficits. She talked about using the possibility of a [Child Protective Services] referral to force [the] Claimant into a better effort and about asking her to bring her ex-husband to the exam. . [.] We kicked around some ideas & she has a very good handle on the issues at hand . . .[41]

Defendant argues plaintiff has failed to show any prejudice here, as she received notice of

---

[37] AR 25.

[38] AR 25-26.

[39] AR 26.

[40] AR 561.

[41] *Id.*

ORDER - 7

the *ex parte* communication and a meaningful opportunity to be heard, given that documentation of the *ex parte* communication was included in the record prior to the hearing, and plaintiff, who was represented by counsel, could have requested that Dr. Mayers be subpoenaed in regard to the *ex parte* communication. Where the *ex parte* communication occurs prior to the hearing, and the claimant's counsel has "had an adequate opportunity to deal with it" at the hearing and before the ALJ has "formed a conclusion," it seems prejudice will not be found.[42]

Here, though, plaintiff's counsel was not hired until the day before the hearing, and thus it is highly unlikely he had sufficient time to review the administrative record, discover the *ex parte* communication, and then request a subpoena.[43] Indeed, the hearing notice states that the ALJ must receive the subpoena request *no later than five days* prior to the hearing.[44] Nor did the ALJ give any "assurance that the communication had no influence on the result."[45] Rather, to the contrary, the ALJ expressly relied in part on Dr. Mayers' December 2011 test results to reject her earlier September 2011 conclusions.

Accordingly, while the ALJ may have provided other valid reasons for rejecting the September 2011 conclusions – such as their inconsistency with Dr. Buben's treatment records – the Court cannot say that the ALJ's evaluation of those conclusions as a whole was not impacted by the December 2011 test results. On the other hand, because the ALJ did offer other reasons that by themselves do appear to constitute valid bases for upholding the ALJ's rejection of the September 2011 conclusions, the Court is not prepared at this time to find plaintiff clearly was

---

[42] *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012) (citing *Alexander Shokai, Inc. v. Comm'r*, 34 F.3d 1480, 1484 (9th Cir. 1994)).

[43] AR 37, 199, 220.

[44] AR 202.

[45] *Ludwig*, 681 F.3d at 1053.

ORDER - 8

prejudiced by the ALJ's reliance on the December 2011 test results.[46] However, as this matter is being remanded anyway in light of the ALJ's improper rejection of the lay witness evidence, the Commissioner should re-consider this issue on remand as well.

III.     The ALJ's RFC Assessment

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.[47] If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends.[48] If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities."[49] A claimant's RFC assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.[50]

In this case, the ALJ found that prior to April 1, 2011, plaintiff had the RFC to perform the full range of work at all exertional levels, as well as work that involved simple routine tasks with occasional changes in the work setting and occasional interaction with the public.[51] The ALJ found that after April 1, 2011, plaintiff had the RFC to perform a full range of medium work, as well as work involving simple routine tasks that do not involve a manufacturing style production pace, and occasional changes in the work setting and occasional interaction with the

---

[46] *Id.* at 1054.

[47] *See* 20 C.F.R. § 416.920.

[48] *See id.*

[49] Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2.

[50] *Id.*

[51] AR 18.

ORDER - 9

public.[52] But because of the ALJ's error in rejecting the lay witness evidence and the questions surrounding the opinion evidence from Dr. Mayers, it is far from clear that either of the above RFC assessments completely and accurately describe all of plaintiff's functional limitations and thus that they are supported by substantial evidence. Therefore, here too, the ALJ erred.

IV.  The ALJ's Step Four and Step Five Determinations

At step four of the sequential disability evaluation process, the ALJ found that prior to April 1, 2011, plaintiff was capable of performing her past relevant work, which did not require performance of work-related activities precluded by her RFC.[53] But because as discussed above the ALJ erred in assessing plaintiff's RFC, the ALJ's step four determination also cannot be said to be supported by substantial evidence or free of error. For the same reason, the ALJ also erred in determining plaintiff to be capable of performing other jobs existing in significant numbers in the national economy at step five, since that determination is based on the testimony of the vocational expert offered in response to a hypothetical question concerning an individual with the same RFC as plaintiff.[54]

V.  Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits."[55] Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[56] Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of

---

[52] AR 18-19.

[53] AR 27.

[54] AR 28-29.

[55] *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

[56] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

ORDER - 10

benefits is appropriate."[57]

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose."[58] Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.[59]

Because issues remain in regard to the lay witness evidence and the opinion evidence from Dr. Mayers, and therefore in regard to plaintiff's RFC and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 15th day of April, 2016.

Karen L. Strombom
United States Magistrate Judge

---

[57] *Id.*

[58] *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).

[59] *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

ORDER - 11